# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

THE CINCINNATI INSURANCE
COMPANY,

    Plaintiff,

v.                                                             Case No. 3:18-cv-750-J-32PDB

SUPERIOR GUARANTY
INSURANCE COMPANY,

    Defendant.

## **O R D E R**

Where a property manager waives its subrogation rights in a property management agreement, can its insurer nonetheless bring a subrogation action against the property owner's insurer because the property manager, by performance of the duties under the agreement, became an additional insured under the owner's policy?

This insurance coverage case is before the Court on cross motions for summary judgment, (Docs. 35, 36), to which the parties responded, (Docs. 38, 41). On November 6, 2019, the Court held a hearing on the motions, the record of which is incorporated herein, (Doc. 43). At the hearing, the Court directed the parties to supplement their motions, which they have done. (Docs. 44, 45).

## I. BACKGROUND

This case concerns insurance coverage for defending and indemnifying Redus Florida Housing, LLC, the property owner, and MV Senior Management, LLC ("MV"), the property manger, in a state court lawsuit. In the state court suit, Plaintiff Cincinnati Insurance Company defended and indemnified MV and Defendant Superior Guaranty Insurance Company defended and indemnified Redus. Cincinnati asserts that Superior should have also defended and indemnified MV and seeks reimbursement for those costs. (Doc. 36 at 9).

### A. The Property Management Agreement

In March 2012, Redus owned Brighton Bay Senior Living, LLC d/b/a Wellgate Jacksonville, LLC ("senior living community") and MV managed the property. (Doc. 36 at 2). Redus and MV operated under a Property Management Agreement ("the Agreement"), which began October 20, 2011 and was to expire April 30, 2012. (Doc. 35-4 at 2). Under the Agreement, MV was to "manage, operate and maintain the Property in an efficient manner and in a manner satisfactory to [Redus] . . . ." (Doc. 35-4 at 2). Section 4.1 of the Agreement requires MV to maintain a commercial general liability insurance policy with $1,000,000 in bodily injury coverage and umbrella coverage of not less than $25,000,000. (Doc. 35-4 at 6–7). Per the Agreement, MV was to name Redus as an additional insured. Id. at 7. Further, the Agreement provides that "[t]he insurance coverages required under this Section 4.1 shall be excess over any

valid and collectable insurance or program of self-insurance carried or maintained by [Redus]." Id. Additionally, the Agreement states:

> [MV] waives all rights to subrogation against [Redus], . . . and for the [CGL and umbrella] insurance coverage listed in . . . Section 4.1, the policies shall recognize such waiver of rights. This waiver of subrogation shall apply whether or not there are any deductibles or self-insurance. Similarly, in the absence of insurance, this waiver shall apply in the same manner it would if the above-described policies were in effect.

Id. The Agreement also contains an indemnification provision, which requires the actively negligent party to indemnify the other if sued for the tortfeasor's actions. Id. at 8–9.

**B. The Underlying Action**

Sometime between February 9 and March 8, 2012, Hilda Gelfman allegedly contracted Legionnaire's Disease while residing at the senior living community. (Doc. 35 at 2). Gelfman sued Redus, MV, and others in Florida state court ("underlying action"). (Doc. 1-2 at 1). Gelfman alleged that MV was negligent in failing to "properly inspect, maintain and repair" the senior living community's "operating systems, including the potable water and plumbing systems . . . ." (Doc. 1-2 ¶¶ 66–67). Further, Gelfman alleged that "Redus, as the owner and operator of the senior living community, had a non-delegable duty to ensure the safe condition of the premises." Id. at ¶ 82.

Redus filed a third-party complaint against MV alleging two counts: common law and contractual indemnity and breach of contract. (Doc. 35-3 at 6).

3

Redus's third-party complaint asserted that under the Agreement MV was required to secure a commercial general liability insurance policy naming Redus as an additional insured and to defend and indemnify Redus for any suit arising from MV's negligence in the performance of its duties under the Agreement. (Doc. 35-3 at 4–5). The third-party complaint was later converted to a crossclaim against MV. (Doc. 35-2).

Gelfman's claims were globally settled, but Redus's crossclaim against MV remains pending. The state court found that Redus was entitled to indemnity under the Agreement. Order Granting in Part and Denying in Part Redus Florida Housing, LLC's Motion for Partial Summary Judgment as to Indemnity by MV Senior Management, LLC ("Order PSJ"), Gelfman v. MV Residential Dev., LLC (Underlying Action), No. 2016-CA-1527 (Fla. 4th Cir. Ct. July 14, 2017); Transcript of May 11, 2017 Hearing, id. (Fla. 4th Cir. Ct. July 11, 2017). MV appealed but the First District Court of Appeal dismissed for lack of jurisdiction because the breach of contract claim was still pending and was intertwined with the indemnity claim. MV Senior Mgmt., LLC v. Redus Fla. Hous., LLC, 265 So. 3d 738, 739 (Fla. 1st DCA 2019). After dismissal of the appeal, the circuit court entered judgment for Redus on its breach of contract claim and awarded it attorneys' fees and costs. Order Granting Redus's Motion for Partial Summary Judgment, Underlying Action, No. 2016-CA-1527 (Fla. 4th

Cir. Ct. Dec. 19, 2019). MV appealed again and the case is currently pending before Florida's First District Court of Appeal.

**C. This Lawsuit**

While the underlying action was ongoing, Cincinnati filed this subrogation claim against Superior and Redus (Doc. 1). The operative Amended Complaint alleges breach of contract by Superior (Count I), and seeks a declaratory judgment that Superior was required to defend and indemnify MV in the underlying action (Count II). (Doc. 13 at 8–10).[1] The Amended Complaint alleges: "By virtue of its payment of defense and indemnification costs on behalf of [MV], [Cincinnati] is subrogated to the interests of [MV] . . . ." (Doc. 13 ¶ 25). The Court dismissed Redus from the case because Cincinnati made no claims against it and sought no relief from it. (Doc. 26).

Cincinnati and Superior have both moved for summary judgment. Superior contends that: (1) the indemnification provision in the Agreement controls the priority of coverage; (2) Cincinnati is collaterally estopped from challenging the state court judgment finding MV was required to defend and indemnify Redus; (3) Superior was not required to defend and indemnify MV because the negligent conduct alleged in the underlying action involved

---

[1] During the pendency of the underlying action, Cincinnati tendered its defense and indemnity of MV to Superior, (Doc. 1-4), which Superior declined, (Doc. 1-5).

5

maintenance and not real estate transactions; and (4) Cincinnati has failed to prove it has subrogation rights. (Doc. 35). Cincinnati argues that Superior should have defended MV in the underlying action because: (1) MV was an additional insured under Superior's policy; and (2) Cincinnati's coverage is excess to Superior's based on an "other insurance" endorsement in Cincinnati's policy that makes it excess to other insurance available to MV while acting as a real estate manager. (Doc. 36 at 5–9).

## II. DISCUSSION

### A. Subrogation Law[2]

Cincinnati asserts a subrogated breach of contract claim that it paid for MV's defense and indemnity, but that Superior should have done so. (Doc. 13 ¶ 25). Subrogation is "[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." *Subrogation*, Black's Law Dictionary (11th ed. 2019). "In the insurance context, [subrogation] takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third persons[, including other insurers,] legally responsible to the insured for a loss which the insurer has both insured and paid." St. Paul Fire & Marine Ins. Co. v. Lexington Ins. Co., No. 05-80230-CIV, 2006 WL 1295408, at *6 (S.D.

---

[2] Florida law applies in this diversity action.

6

Fla. Apr. 4, 2006) (citing Ranger Ins. v. Travelers Ins., 389 So. 2d 272 (Fla. 1st DCA 1980)). The insurer "stands in the shoes" of its insured and has no greater rights than that of its insured. Fla. Patient's Comp. Fund v. St. Paul Fire & Marine Ins. Co., 559 So. 2d 195, 197 (Fla. 1990).

> Where there are multiple layers of coverage, equitable subrogation allows an insurer that has paid coverage or defense costs to be placed in the insured's position to pursue a full recovery from another insurer who was primarily responsible for the loss. Unlike the right of contribution which typically applies to permit an allocation of loss between coprimary insurers or obligors, the right of equitable subrogation allows the entire loss to shift, typically from an excess carrier to a primary one.

St. Paul, 2006 WL 1295408, at *6 (citing U.S. Fire Ins. Co. v. Morrison Assurance Co., 600 So. 2d 1147 (Fla. 1st DCA)).

According to the Florida Supreme Court subrogation is generally appropriate where:

> (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party.

Dade Cty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 646 (Fla. 1999). "As a result of equitable subrogation, the party discharging the debt stands in the shoes of the person whose claims have been discharged and thus succeeds to the right and priorities of the original creditor." Id. "In determining whether or not to allow an equitable subrogation claim to proceed, the Supreme Court of

7

Florida has emphasized that equitable concerns outweigh 'technical rules of law.'" Zurich Am. Ins., 248 F. Supp. 3d at 1288 (quoting Dantzler Lumber & Export Co. v. Columbia Cas. Co., 156 So. 116, 119 (Fla. 1934)). The doctrine should "'be applied or not according to the dictates of equity and good conscience, and consideration of public policy. . . . The right to it depends upon the facts and circumstances of each particular case, and to which must be applied the principles of justice.'" Id. (quoting Dantzler, 156 So. at 119).

**B. Cincinnati's Right to Subrogation**

Superior contends that Cincinnati cannot prevail because MV has no right to subrogation. (Doc. 41 at 10). To reiterate, an insurer seeking subrogation has no greater rights than its insured. Radio Station WQBA, 731 So. 2d at 647. The Agreement between MV and Redus states: "(iii) [MV] waives all rights of subrogation against [Redus]. . . . [I]n the absence of insurance, this waiver shall apply in the same manner it would if the above-described policies were in effect." (Doc. 35-4 at 7). Thus, because MV has no rights to subrogation, Cincinnati, its insurer, has none. Radio Station WQBA, 731 So. 2d at 647 ("[I]f the subrogor has no rights or priorities against a specified third party, then the subrogee has nothing to inherit as against that third party.").

To circumvent the subrogation waiver, Cincinnati argues that it applies only to claims against Redus and not to claims against Redus's insurance company, Superior, and that MV has rights to sue Superior directly because MV

was added to the Superior policy as an additional insured. (Doc. 44 at 6–7). It is true that the Agreement does not directly state that MV waives subrogation rights against Redus's insurer, Superior. However, the subrogation waiver is naturally applied to claims against Superior; it is not necessary that it explicitly say so. Also, the Agreement demonstrates that the intent of the parties was that MV, for defense and indemnification, would look to its own insurance it was required to purchase under the Agreement and not seek recovery from Redus or Superior. (Doc. 35-4). The Agreement provides that MV will maintain insurance, that MV will add Redus as an additional insured to its (the Cincinnati) policy, that if either party is negligent it will indemnify the other for such negligence, that MV waives its subrogation rights, and that the waiver of subrogation will be recognized in MV's policy and applies even in the absence of the required insurance. Id. The purpose of these provisions is to require the parties to look to their own insurance to defend and indemnify them. See Fairchild ex rel. State Farm Fire & Cas. Co. v. W. O. Taylor Commercial Refrigeration & Elec. Co., 403 So. 2d 1119, 1120 (Fla. 5th DCA 1981) ("[P]arties to a contract may mutually agree that one party will obtain insurance as part of the bargain, to shift the risk of loss from both of them to the insurance carrier. If loss occurs, they are deemed to have agreed to look solely to the insurance . . . and subrogation is not allowed."); see also Cont'l Cas. Co. v. City of S. Daytona, 807 So. 2d 91, 92 (Fla. 5th DCA 2002) ( holding that if a specific contractual

9

agreement shifts liability from one party to another, the agreement controls regardless of whether each party carries insurance). Allowing Cincinnati to recover would ignore the intent of the parties and purpose of the Agreement.

Furthermore, equitable considerations do not favor subrogation. See Zurich Am. Ins., 248 F. Supp. 3d at 1288. Although neither party has provided any case on point, subrogation case law regarding equitable considerations informs this issue. See id. ("[T]he Supreme Court of Florida has emphasized that equitable concerns outweigh 'technical rules of law.'"). The Agreement contemplates MV looking to the insurance it purchased to cover any claims against it. Further, MV was only added as an additional insured to the Superior policy because of a form endorsement, not any provision of the Agreement. In fact, the Agreement required the opposite—that Redus be added as an additional insured to the Cincinnati policy—something Superior asserts was never done. Thus, allowing MV to utilize the insurance that Redus purchased would be inequitable.

After the hearing, the Court gave the parties an opportunity to supplement their briefing on the subrogation waiver issue. (Doc. 43). Neither party has requested to rely on parol evidence. Thus, the Court looks to the Agreement in determining the intent of the parties. The Agreement, as further

informed by equitable considerations, dictates that Cincinnati has no rights to subrogate against Superior.[3]

Accordingly, it is hereby

**ORDERED:**

1. Defendant Superior Guaranty Insurance Company's Motion for Summary Judgment (Doc. 35) is **GRANTED.**

2. Plaintiff Cincinnati Insurance Company's Motion for Summary Judgment (Doc. 36) is **DENIED**.

3. The Clerk shall enter judgment in favor of Superior Guaranty Insurance Company and against Cincinnati Insurance Company, and then close the file.

**DONE AND ORDERED** in Jacksonville, Florida this 26th day of February, 2020.

                                                                              *Timothy J. Corrigan*
                                                                              TIMOTHY J. CORRIGAN
                                                                              United States District Judge

jb
Copies to:

Counsel of record

---

[3] Given this ruling, the Court declines to address the parties' other arguments.